Case No. 23-5049

In the United States Court of Appeals
for the Tenth Circuit

**United States of America**,
Plaintiff-Appellee,

v.

**Alexander Nicholaus Sweet,**
Defendant-Appellant.

On Appeal from the United States District Court
for the Northern District of Oklahoma
The Honorable John F. Heil, III, Chief United States District Judge
D.C. Case No. 4:21-cr-00340-JFH-1

**Reply to Response to Petition for Panel Rehearing and Rehearing En Banc**

Office of the Federal Public Defender
633 17th Street, Suite 1000
Denver, Colorado 80202
Tel: (303) 294-7002
Fax: (303) 294-1192
Email: Leah_Yaffe@fd.org

Virginia L. Grady
Federal Public Defender

Leah D. Yaffe
Assistant Federal Public Defender

Attorneys for Appellant
Alexander Nicholaus Sweet

September 3, 2024

## Argument

**I.   The Government's Response Misunderstands the Supreme Court's "Core of Criminality" Test for Indictment Specificity Claims.**

The government makes at least three analytical errors in response to Mr. Sweet's request for rehearing on the merits of his indictment specificity claim.

**First,** the government appears to agree with the panel's holding that the "core of criminality" test from *Russell v. United States*, 369 U.S. 749 (1962) only requires factual detail about the core acts criminalized by a statute. Resp. at 7-8; *see* Opinion at 25. But as Mr. Sweet has explained, more factual detail is required in cases when assessing the "core of criminality" under the statute "depends . . . crucially" on "a specific identification of fact," even if the specific fact is not itself the core criminal act. *Russell*, 369 U.S. at 764; Pet. at 5-7.

The government's response does not discuss *Russell* in any kind of detail. But if its position were correct, *Russell* would have come out the opposite way. That's because the indictments in Russell *did* include each specific question that the defendants allegedly failed to answer—the core act criminalized by the statute in that case. What the *Russell* indictments did *not* include was the ancillary fact (the subject matter of the congressional hearing) required to determine if the core act (a defendant's failure to answer specific questions during the hearing) was legal or illegal in a given case (by being either pertinent to that subject matter or not). The response

does not explain why the fair amount of detail included in the *Russell* indictments was nonetheless insufficient, if not for the reason Mr. Sweet has explained.

**Second,** and as a result of its misapprehension of *Russell*'s core-of-criminality test, the government fails to articulate any workable rule for determining when indictments must include factual detail beyond the statutory text. *Every* criminal statute includes a core act (or omission). If the point of *Russell* was that such core acts must be described in detail in criminal indictments, then the *Russell* test would require factual detail in many more cases than Mr. Sweet has argued for in this appeal.

Instead of providing any limiting principle, the government simply asserts that cases finding indictments to be insufficiently specific under *Russell* have, so far, been "rare." Resp. at 7. But the reason such decisions are relatively infrequent is because *Russell* does not establish the broad principle reflected in the government's response or the panel decision. Instead, *Russell* applies only to the small subset of cases, including Mr. Sweet's, in which a statute's text does not describe the ancillary fact(s) required to determine whether a defendant's actions in a particular case are legal or illegal, and therefore do not adequately inform the defendant of the government's basic theory of the case.

**Third,** the government appears to misunderstand Mr. Sweet to be arguing that an indictment must allege every fact the government would need to prove at trial to convince a *jury* of a defendant's guilt. *See* Resp. at 8 (asserting that "the Supreme Court and this Court have repeatedly held that an indictment need not set forth ancillary

3

facts even when proving those facts is 'essential' to proving guilt"). But that has never been Mr. Sweet's position. Rather, his point (and the purpose of the *Russell* core-of-criminality test) is that an indictment must allege the facts essential to "apprise the *defendant* of what he must be prepared to meet." *Russell*, 369 U.S. at 764 (internal quotations omitted) (emphasis added); *cf.* Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the *essential* facts constituting the offense charged.") (emphasis added). Providing notice to a defendant of its theory of the case, and proving a case to a jury beyond a reasonable doubt, are two separate tasks. An indictment must provide enough notice to achieve the former, and Mr. Sweet has never requested the level of detail that would be required to achieve the latter.

Mr. Sweet's argument is consistent with the cases that the government cites in its response. For example, in both *Hamling v. United States*, 418 U.S. 87 (1974), and *United States v. Resendiz-Ponce*, 549 U.S. 102 (2007), the Supreme Court reiterated Mr. Sweet's main point—that specificity beyond the statutory text is required when "guilt depends . . . crucially upon . . . a specific identification of fact." *Hamling*, 418 U.S. at 118 (quoting *Russell*, 369 U.S. at 764); *see Resendiz-Ponce*, 549 U.S. at 110 (same). The reason more detail was not required in those cases is because the challenged language in the indictments had sufficiently-definite legal meanings as to provide the defendants with adequate notice of what they were going to have to answer for in court. *See Hamling*, 418 U.S. at 118 (more detail not required with respect to definition

of "obscene" because it is a "legal term of art" and not a "generic" statutory phrase); *Resendiz-Ponce*, 549 U.S. at 107 (indictment alleging attempted unlawful reentry did not need to allege particular "overt act" because the "the word 'attempt'" in the indictment "as used in the law for centuries . . . encompasses both the overt act and intent elements," and because other factual details in indictment provided sufficient notice to defendant). In contrast, the phrase "sexual activity" in Section 2422(b) is the type of "generic" statutory language for which additional factual detail is required. *See* Opening Br. at 22, 25-26; Reply Br. at 5.

Mr. Sweet has never argued that the indictment should have listed the specific evidence the government was going to rely upon at trial. *See* Reply Br. at 6-7 (explaining that the government's reliance on *United States v. Mobley*, 971 F.3d 1187 (10th Cir. 2020), and *United States v. Flechs*, 2022 WL 71651 (N.D. Okla. Jan. 6, 2022), is misplaced because the defendants in those cases sought detail about the government's *evidence* at trial, not its basic theory of the case). He has only argued that—if the government intended to prosecute him for allegedly enticing M.L.C. to commit a lewd molestation on another child—the indictment should have informed him of that basic theory of the case.

Rehearing by the panel or by the en banc Court is thus warranted on this exceptionally important question of law. *See* Pet. at 9-12.

## II. The Government Does Not Adopt the Panel Decision's Approach to Harmless-Error Review.

Mr. Sweet's petition for rehearing also asserts that rehearing is warranted because the panel decision erroneously placed the burden to show prejudice on him, instead of holding the government to its burden to prove harmlessness beyond a reasonable doubt.

The government appears to agree that harmless-error review applies to specificity of the indictment claims. Resp. at 10-13. Nonetheless, it defends the panel decision on the basis that "this Court has required defendants to show a technical deficiency in an indictment prejudiced them before engaging in harmless error review." *Id.* at 11. The cases the government cites for this proposition—at most—indicate this Court's reluctance to find *error* when it is clear that the defendant was aware of the government's theory of the case from the get-go. *See* Reply Br. at 11; *see also id.* at 6. But those cases are inapposite here, where the government conceded at trial that Mr. Sweet did not have notice of its lewd-molestation theory of enticement.[1]

Regardless, the government appears to agree that constitutional harmless-error review applies to this case, and it nowhere disputes (nor could it) that it has the burden to demonstrate harmlessness, not Mr. Sweet. Nor does it specifically defend

---

[1] The government renews its argument that there was no prejudice to Mr. Sweet because he did not ask for a bill of particulars. Resp. at 11-12. The cases on which the government relies do not support its point, *see* Reply Br. at 10-12, and the panel correctly acknowledged that a bill of particulars cannot cure an insufficient indictment, *see* Opinion at 16-17.

6

the other flaws in the panel decision's prejudice analysis that Mr. Sweet described in his petition. *See* Pet. at 14-15.

Instead, the government endorses only part of the panel decision's analysis—the idea that the lewd-molestation theory was the weakest enticement theory. Mr. Sweet has elsewhere explained his position that the lewd-molestation theory was in fact one of the strongest at trial. *See* Reply Br. at 1-2, 12-13. Regardless, the government cannot meet its burden under the constitutional harmless-error standard simply by pointing to potential weaknesses that a jury *might* have found with a theory. The government's position ignores that there were no specific communications between Mr. Sweet and M.L.C. introduced at trial regarding the other theories of enticement; that the prosecution argued to the jury that it could convict Mr. Sweet of enticement solely on the lewd-molestation theory, *see United States v. Irvin*, 682 F.3d 1254, 1264 (10th Cir. 2012) (quoting *United States v. DeLoach*, 504 F.2d 185, 192 (10th Cir. 1974)); and that the jury was instructed that lewd molestation was a possible basis for the enticement charge.

Finally, the government's additional harmlessness arguments are based on its apparent assumption that—had Mr. Sweet known that lewd molestation was one of the government's theories of enticement—his defense at trial would not have looked any different. The government ignores Mr. Sweet's argument that a surprise theory of a case impacts not only a defendant's strategy during trial, but also his pretrial preparation. *See* Opening Br. at 28-29. Regardless, the government cannot prove that

7

the error "did not contribute to the verdict," *Chapman v. California*, 386 U.S. 18, 24 (1967), just by pointing out that the defense attempted to respond to the lewd-molestation theory on the fly.

### III. The Government Does Not Specifically Respond to Mr. Sweet's Narrow Request for Rehearing on One Plain Prosecutorial Misconduct Claim.

The government's response broadly defends the panel's decision with respect to each of Mr. Sweet's plain prosecutorial misconduct claims on appeal. But it does make specific arguments in response to Mr. Sweet's narrow request for rehearing on only one of those claims. To clarify, Mr. Sweet only seeks rehearing as to the distortion of evidence misconduct claim, and even then, only to the prejudice that the distortion of evidence had with respect to count three of the indictment (receipt/distribution of child pornography). Pet. at 15-17. Nothing in the government's response addresses the specific, and discrete, basis of Mr. Sweet's request for rehearing on this issue.

## Conclusion

Mr. Sweet respectfully requests reconsideration by the panel or the en banc Court.

                Respectfully submitted,

                Virginia L. Grady
                Federal Public Defender

By: */s/ Leah D. Yaffe*
    Leah D. Yaffe
    Assistant Federal Public Defender
    633 17th Street, Suite 1000
    Denver, Colorado 80202
    (303) 294-7002
    Email: Leah_Yaffe@fd.org

## Certificate of Compliance

As required by Fed. R. App. P. 32(g)(1) and Fed. R. App. P. 35(b)(2), I certify that this reply is proportionally spaced and contains 1,753 words. I relied on my word processor to obtain the count, and the information is true and correct to the best of my knowledge.

/s/ Leah D. Yaffe
Leah D. Yaffe
Assistant Federal Public Defender